GAURAV BOBBY KALRA, Bar No. 219483
bkalra@grsm.com
LINDSAY M. VICK (*Admitted Pro Hac Vice)*
lvick@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
3 Parkcenter Drive, Suite 200
Sacramento, California 95825
Telephone: (279) 274-4582
Facsimile: (916) 920-4402

Attorneys for Defendant
RHOMBUS POWER, INC.



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Douglas R. Woodall, an individual,

Plaintiff,

v.

Rhombus Power, Inc., a Delaware Corporation; and Does 1-10, inclusive,

Defendants.

Case No. 26-cv-07387-EKL

**DECLARATION OF HALLIE BALKIN IN SUPPORT OF DEFENDANT RHOMBUS POWER, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY ACTION**

Date: January 27, 2027
Time: 10:00 a.m.
Courtroom: 7, 4th Floor
Judge: Hon. Eumi K. Lee

Complaint Filed: July 16, 2026

I, Hallie Balkin, declare as follows:

1. I am General Counsel for Defendant Rhombus Power, Inc. ("Rhombus Power"), and I have served in this position for nearly two years. I make this declaration in support of Rhombus Power's Motion to Compel Arbitration. The facts stated here are within my personal knowledge, and if called as a witness I could and would testify competently to them.

2. Rhombus Power is a defense and intelligence technology company that develops artificial-intelligence ("AI") software for national-security customers, contracts with the United States Government, and operates across state lines. It is a recognized leader in AI that delivers mission

critical platforms and services to United States defense, intelligence, and national security agencies as well as to allied governments.

3. Rhombus Power's mission is to empower decision makers with AI-powered decision intelligence, transforming complexity into clarity and uncertainty into action.

4. Rhombus Power was founded in 2011 and is headquartered in Silicon Valley. It employs approximately 185 professionals who are dedicated to advancing AI-powered decision intelligence for global defense and security.

5. At Rhombus Power, I am responsible for overseeing the company's legal and compliance affairs, advising its leadership, and managing contractual, corporate, and employment matters, as well as outside counsel.

6. Rhombus Power hired Douglas Woodall, a retired U.S. Army colonel, to serve as a Client Success Manager, effective July 31, 2023. Attached hereto as Exhibit 1 is a true and correct copy of the offer letter Rhombus Power provided to Woodall in connection with his employment.

7. Paragraph 18 of the offer letter provides that any dispute arising out of or in any way connected to Woodall's employment with Rhombus Power will be resolved through binding arbitration.

8. Woodall first reported a claim of potential harassment concerning another employee, Noreeza Khan, on September 21, 2025. The claim related to conduct that occurred while Khan was a participant on a Rhombus Power visit to Ukraine earlier that year.

9. After this initial report, Rhombus Power's Director of People Operations, Melissa Fehl, spoke directly with 4 other participants in the Ukraine trip. Fehl did not make contact with the client/contractor involved, and Khan refused to participate in the investigation.

10. Ultimately, Rhombus Power's conclusion after its investigation into Woodall's report was inconclusive as to whether actionable conduct occurred. Nevertheless, Rhombus Power made internal recommendations to mitigate exposure to potentially uncomfortable or harassing interactions.

11. Then, on October 20, 2025, Woodall sent Hallie Balkin, Rhombus Power's General Counsel, and Melissa Fehl, Rhombus Power's Director of People Operations, an email titled

GORDON REES SCULLY MANSUKHANI, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

"Report of Potential Code of Conduct Violation and Recommendations for Resolution." Attached hereto as Exhibit 2 is a true and correct copy of the October 20, 2025 email.

12. Woodall reported "an incident involving workplace gossip" that he believed violated Rhombus Power's Code of Conduct prohibiting "verbal harassment, intimidation, bias, and discrimination" and that the incident created a hostile and embarrassing environment for [Khan]." Ex. 2 at 1. Rhombus Power subsequently hired Pillsbury to conduct an objective, impartial, and fair investigation into Woodall's gossip allegations.

13. Rhombus Power terminated Woodall's employment with the company after it made the decision to eliminate the Warfighting Department in which Woodall worked. Woodall's complaint filed in this Court followed.

14. Because Woodall declined to stipulate to binding arbitration per the offer letter he signed with Rhombus Power, I make this declaration in support of Rhombus Power's Motion to Compel Arbitration.

GORDON REES SCULLY MANSUKHANI, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 8th day of October, 2026 in Palo Alto, California.

By /s/ Hallie Balkin
Hallie Balkin

GORDON REES SCULLY MANSUKHANI, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

# EXHIBIT 1

**Rhombus Power, Inc.**
**3200 Hillview Avenue**
**Palo Alto, CA 94306**

July 25, 2023
Mr. Doug Woodall
Re: Offer of Employment

Dear Doug,

I am happy to offer you the position of Client Success Manager for Rhombus Power, Inc. (the "Company"). This letter sets forth the terms and conditions of your employment with the Company. It is important that you understand clearly both what your benefits are and what the Company expects of you. By signing this letter, you will be accepting employment on the following terms.

1. Effective Dates. Your employment will commence on July 31, 2023 (the "Effective Date). Your first 6 months at Rhombus will be considered a probationary period. This full-time offer is contingent on your excellent performance during this probationary period. If you succeed through this probationary period, this offer letter will serve to establish your continued role at Rhombus. Your success will need to be confirmed with me by your supervisors.

2. Duties. Your job title will be Client Success Manager. You will be reporting to Dave Hudak, Senior Director of Client Services and Dr. Sarah Cowan, VP of Operations for Client duties, and Dr. Anshu Roy, CEO for Business Development duties. You might report to other people as we deem fit. Your duties generally will be in the area of contributing towards all product lines within Rhombus. This is a full-time position until further notice.

3. Location. Your primary place of work will be in Rhombus location in Omaha, Nebraska. The location of your work will be dictated by Rhombus's customer and business needs.

4. Compensation. This is an exempt position, and you will be paid an annual base salary of $210,000**.** In addition, you will be eligible for up to $25,000 in annual performance-based bonus. Rhombus agrees to pay a one-time signing bonus of $15,000 that will be payable with the first payroll cycle of your employment. All required taxes will be deducted in accordance with Federal and State laws. Your compensation will generally be reviewed annually. All reasonable business expenses that are documented by you and incurred in the ordinary course of business will be reimbursed in accordance with the Company's standard policies and procedures.

5. Incentive Compensation. You will be eligible to participate in annual performance bonus plans established by the Company from time to time for similarly situated employees, subject to the terms and conditions established by the Company for such bonus plans. Any such bonuses will be based on the achievement of goals and milestones established by the Company in its sole discretion, and the Company in its sole discretion may amend or terminate any such bonus plans at any time.

6. Benefits. We offer healthcare and 401(k) plan to all Rhombus employees. Our Benefits coordinator will let you know the healthcare packages and 401(k) plan currently in offer.

7. Adjustments and Changes in Employment Status. The Company reserves the right to make personnel decisions regarding your employment, including but not limited to decisions regarding any transfers or other changes in duties or assignments, changes in your salary and other compensation, changes in benefits and changes in Company policies or procedures.

8. At-will Employment. Your employment with the Company is "at-will." In other words, either you or the Company can terminate your employment at any time for any reason, with or without cause and with or without notice, without liability except as expressly set forth in this letter. This term of employment is not subject to change or modification of any kind except if in writing and signed by you and an authorized representative of the Company.

9. Taxes. All forms of compensation referred to in this letter are subject to reduction to reflect applicable withholding and payroll taxes and all other deductions required by law. You acknowledge that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

10. Proprietary Information Agreement. You will be required to sign and abide by the terms of the Rhombus Confidentiality and Inventions Agreement prior to beginning employment.

11. References and Immigration Documents. This offer is contingent upon successful completion of i) a satisfactory background check including a criminal, educational, and employment check and verification; ii) initial-employment drug screen; iii) receiving appropriate security clearances (if required), as well as your ability to prove your identity and authorization to work in the U.S. for the Company. You must comply with the United States Citizenship and Immigration Services employment verification requirements.

12. Company Rules. As an employee of the Company, you will be expected to abide by the Company's rules and regulations. You will be required to sign an acknowledgment that you have read and understand the Company rules of conduct as provided in the Company's Employee Handbook, which the Company will distribute once it is ready.

13. No Conflicting Obligations. By execution of this letter, you represent and warrant that your performance of this letter does not and will not breach any agreement you have entered into, or will enter into, with any other party. You agree not to enter into any written or oral agreement that conflicts with this letter.

14. Post Government Restriction Obligations. Rhombus and you agree to abide by the restrictions prescribed by the U.S. Government while you are Terminal Leave (January 1, 2023 to June 20, 2023).

15. Integrated Agreement. This letter supersedes any prior agreements, representations or promises of any kind, whether written, oral, express or implied between the parties hereto with respect to its subject matter. Likewise, this letter will constitute the full, complete and exclusive agreement between you and the Company with respect to its subject matter. This Agreement may only be changed by writing, signed by you and an authorized representative of the Company.

16. Severability. If any term of this letter is held to be invalid, void or unenforceable, the remainder of the terms herein will remain in full force and effect and will in no way be affected, and the parties will use their best efforts to find an alternative way to achieve the same result.

17. Governing Law. The terms of this letter and the resolution of any dispute as to the meaning, effect, performance or validity of this letter or arising out of, related to, or in any way connected with, this letter, your employment with the Company or any other relationship between you and the Company (a "Dispute") will be governed by the laws of the State of California, without giving effect to the principles of conflict of laws. To the extent not subject to arbitration as described below, you and the Company consent to the exclusive jurisdiction of, and venue in, the state courts in Santa Clara County in the State of California (or in the event of exclusive federal jurisdiction, the courts of the Northern District of California in connection with any Dispute or any claim related to any Dispute).

18. Arbitration. Except as prohibited by law, any Dispute between you and the Company (or between you and any officer, director, employee or affiliates of the Company, each of whom is hereby designated a third party beneficiary of this letter regarding arbitration) will be resolved through binding arbitration in Santa Clara County, California under the Arbitration Rules set forth in California Code of Civil Procedure Section 1280 et seq., and pursuant to California law. Nothing in this arbitration provision is intended to prevent you from filing charges with state or federal agencies. THE PARTIES UNDERSTAND THAT BY AGREEING TO ARBITRATE DISPUTES THEY ARE WAIVING ANY RIGHT THEY MIGHT OTHERWISE HAVE TO A JURY TRIAL. This arbitration provision is not intended to modify or limit the right of the parties to seek equitable relief, such as an injunction or attachment, through judicial process, which will not be deemed a waiver of the right to demand and obtain arbitration.

Please indicate your acceptance of this offer by signing this letter, no later than July 28, 2023. By signing this offer letter, you acknowledge that this letter does not constitute as a contract or employment agreement and does not guarantee employment for a definite duration. We look forward to your joining Rhombus!

Sincerely,

Rhombus Power, Inc.

By: [signature] Anshuman Roy
Anshuman Roy, CEO

Agreed and accepted as of the date written above

DRW
Doug Woodall

Signature: [signature]
Douglas Woodall (Jul 25, 2023 15:27 MDT)

Email: digdugw@yahoo.com

# Woodall, Doug Offer Letter 7.25.2023

Final Audit Report 2023-07-25

| | |
|---|---|
| Created: | 2023-07-25 |
| By: | Melissa Fehl (melissa.fehl@rhombuspower.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAfMwEQHJXmy5ZW2pqOYZVWLMN51TWm1cZ |

## "Woodall, Doug Offer Letter 7.25.2023" History

Document created by Melissa Fehl (melissa.fehl@rhombuspower.com)
2023-07-25 - 9:07:51 PM GMT

Document emailed to Douglas Woodall (digdugw@yahoo.com) for signature
2023-07-25 - 9:08:10 PM GMT

Email viewed by Douglas Woodall (digdugw@yahoo.com)
2023-07-25 - 9:24:52 PM GMT

Document e-signed by Douglas Woodall (digdugw@yahoo.com)
Signature Date: 2023-07-25 - 9:27:34 PM GMT - Time Source: server

Agreement completed.
2023-07-25 - 9:27:34 PM GMT

Adobe Acrobat Sign

# EXHIBIT 2

Hallie Balkin <hallie.balkin@rhombuspower.com>

# Report of Potential Code of Conduct Violation and Recommendations for Resolution

6 messages

**Doug Woodall** <doug.woodall@rhombuspower.com> Mon, Oct 20, 2025 at 7:32 AM
To: Melissa Fehl <melissa.fehl@rhombuspower.com>, Hallie Balkin <hallie.balkin@rhombuspower.com>

Dear Melissa and Hallie,

I am writing to report an incident involving workplace gossip that appears to violate several provisions of Rhombus's Code of Conduct, effective October 13, 2025. This matter concerns Noreeza and has created a hostile and embarrassing environment for her, impacting the overall workplace dynamic in the DC office.

## Description of the Incident

Kevin told me that Ellen Chapin informed him about Noreeza having a "falling out" related to Ukraine. I do not know why Ellen would pass along something like this, and it has since spread throughout the DC office, leading to widespread discussion among employees. Abhishek has already asked Noreeza about Ukraine her first day in the office, advising her to speak with Bruce above her value added? However, the gossip has persisted, causing significant embarrassment and distress to Noreeza due to the lack of transparency in how the information was handled and the nasty nature of the rumors.

This situation has undermined trust and fostered a negative atmosphere, contrary to our commitment to a safe and positive work environment.

## Violations of the Code of Conduct

The actions described, particularly the initiation and dissemination of this gossip by Ellen Chapin (whether starting the rumor or passing it along from executives to Kevin Gunaratna), appear to contravene the following sections of the Code:

- **IV.1. Cultivate a Safe Workplace**: This prohibits harassment of all kinds, including verbal harassment, intimidation, bias, and discrimination. Spreading personal information about a colleague's "falling out" constitutes verbal harassment, as it creates an intimidating and unsupportive environment. The Code requires that any incident of possible harassment be reported immediately and fully investigated, with appropriate corrective actions taken.
- **IV.4. Communicate Responsibly**: This explicitly prohibits written or verbal derogatory remarks about colleagues. Discussing and spreading details of a personal conflict in a derogatory or gossipy manner qualifies as such a remark, harming Noreeza's professional standing and emotional well-being.
- **IV.5. Duty to Report Misconduct**: While Abhishek has taken some steps, the broader dissemination suggests a failure to fully address or report the issue promptly, potentially exacerbating the violation.

These actions also run counter to our core values under the Preface, which emphasize trust, excellence, ethical standards, and protecting our people. Additionally, under VII. Investigating and Reporting Potential Violations, there is an affirmative duty to report suspected violations, and failure to do so may result in disciplinary action.

## Recommendations

To address this matter promptly and fairly, I recommend the following steps:

1. **Investigation into Ellen Chapin's Role**:
    - Initiate a formal investigation by the Human Resources or Legal Team into whether Ellen started the rumor or passed it along from executives to Kevin Gunaratna. This should include interviews with Ellen, Kevin, Abhishek, Noreeza, and any other witnesses identified in the DC office.
    - Gather details such as dates, times, locations of conversations, and any supporting evidence (e.g., emails, messages, or notes).
    - The investigation should assess if this constitutes verbal harassment under IV.1 and derogatory remarks under IV.4, and determine if it creates a conflict of interest or harms Rhombus's interests (as outlined in IV.9).
    - If violations are confirmed, recommend disciplinary actions, including suspension pending the investigation's outcome, up to termination if the conduct is found to be malicious or repeated. This aligns with the Code's requirements for corrective actions and the no-retaliation policy.
2. **Support for Noreeza**:
    - Given the embarrassment caused by this incident, the lack of transparency in handling the information, and the ongoing nasty gossip, I strongly recommend allowing Noreeza to work from home permanently. This would provide her with a reprieve from the office environment while maintaining productivity, and it supports our commitment to a safe workplace (IV.1) and respecting human dignity (I.3).
    - Additionally, offer Noreeza access to counseling or support resources through the People Team to address any emotional impact.
3. **Broader Office Measures**:
    - Communicate a reminder to the DC office about the Code of Conduct, emphasizing responsibilities around communication, harassment prevention, and reporting misconduct.
    - Ensure no retaliation occurs against Noreeza or anyone reporting this issue (such as myself), in line with the Whistleblower Protection Policy (IV.7).

I am reporting this in good faith under the Duty to Report (VII.1) and request that it be handled confidentially to the extent possible. Please let me know if you need any additional information or if I can assist in the investigation.

Best regards, Doug

***Douglas R. Woodall***
**Vice President of Warfighting**
**Rhombus**
**E-mail: doug.woodall@rhombuspower.com**
**(719) 502-7661**

**Verified: This email is genuine, and it originates from within Rhombus.**
***This message (including any attachments) contains confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.***

**Verified:** This email is genuine, and it originates from within Rhombus.
*This message (including any attachments) contains confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.*

---

**Hallie Balkin** <hallie.balkin@rhombuspower.com> Mon, Oct 20, 2025 at 8:14 AM
To: [redacted]

[redacted]

[Quoted text hidden]

---

**Hallie Balkin** <hallie.balkin@rhombuspower.com> Mon, Oct 20, 2025 at 8:19 AM
To: [redacted]

[redacted]

[redacted]

---------- Forwarded message ---------
From: **Doug Woodall** <doug.woodall@rhombuspower.com>
Date: Mon, Oct 20, 2025 at 7:33 AM
Subject: Report of Potential Code of Conduct Violation and Recommendations for Resolution
To: Melissa Fehl <melissa.fehl@rhombuspower.com>, Hallie Balkin <hallie.balkin@rhombuspower.com>

[Quoted text hidden]

---

**Hallie Balkin** <hallie.balkin@rhombuspower.com> Tue, Oct 21, 2025 at 5:38 PM
To: Doug Woodall <doug.woodall@rhombuspower.com>
Cc: Melissa Fehl <melissa.fehl@rhombuspower.com>

Hi Doug,

We appreciate you taking the time to bring our attention to this matter. As you know, we take our Code of Conduct and these types of allegations seriously. As such, the company will be opening an investigation into the hostile interactions and office gossip allegations you provided.

In an effort to maintain and preserve the integrity of this investigation, we ask that you please allow us to conduct the confidential investigation and refrain from speaking about it to others. Along those lines, are you comfortable with Melissa and I disclosing to Noreeza that you submitted the allegations? Or would you alternatively prefer to remain anonymous?

Please let us know soonest.

Thanks!
Best,
Hallie
[Quoted text hidden]

---

**Doug Woodall** <doug.woodall@rhombuspower.com> Tue, Oct 21, 2025 at 5:42 PM
To: Hallie Balkin <hallie.balkin@rhombuspower.com>
Cc: Melissa Fehl <melissa.fehl@rhombuspower.com>

Good evening.

Yes you can-- she has been constantly asked about Ukraine at the office in DC and it's humiliating for her.

Ellen certainly promulgated this rumor with Kevin. I do not know where Ellen got it. That's a key piece too.

I also recommend we safeguard Noreeza and allow her to telework and not have this unpleasantness to deal with.

Thanks

Best

Doug.

**_Douglas R. Woodall_**
**Vice President of Warfighting**
**Rhombus**
**E-mail: doug.woodall@rhombuspower.com**
**(719) 502-7661**

**Verified: This email is genuine, and it originates from within Rhombus.**
**_This message (including any attachments) contains confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited._**

[Quoted text hidden]

---

**Hallie Balkin** <hallie.balkin@rhombuspower.com> Tue, Oct 21, 2025 at 6:04 PM
To: [redacted]

---------- Forwarded message ---------
From: **Doug Woodall** <doug.woodall@rhombuspower.com>
[Quoted text hidden]
[Quoted text hidden]